MICKEY MICHELLE EMANUEL v. NORRIS L. FELLOWS

No. 7914SC1112

(Filed 17 June 1980)

Process § 10.2– service by publication – diligence in determining defendant's whereabouts – sufficiency of evidence

There was no merit to defendant's contention that service of process by publication was improper because plaintiff failed to exercise due diligence to discover defendant's address, whereabouts, dwelling house or usual place of abode where the evidence tended to show that plaintiff attempted to have the sheriff serve defendant personally with process at defendant's old address which was shown in the then current telephone directory; upon learning that the sheriff was unable to serve defendant personally, plaintiff's counsel then placed a call to the number listed for defendant in the then current phone directory; the number was no longer in service; plaintiff's counsel called directory assistance and was told there was no other listing for defendant; counsel then contacted defendant's insurance carrier, but it knew only of defendant's old address; plaintiff then issued a new summons and commenced service by publication; just prior to commencing service by publication, plaintiff mailed a copy of the new summons, complaint and service by publication to defendant's insurance carrier; and a phone directory listing defendant's new address was not published until after service by publication had been completed.

APPEAL by defendant from *Herring, Judge.* Judgment entered 17 September 1979 in Superior Court, DURHAM County. Heard in the Court of Appeals 15 May 1980.

This case reaches us on appeal from an order denying defendant's motion to dismiss pursuant to G.S. 1A-1, Rule 12(b)(2)(4)(5). The trial court made findings of fact to which no exceptions are taken. Those findings are as follows.

1. That on April 15, 1976, there was an incident on Rose of Sharon Road near its intersection with Cole Mill Road in the County of Durham in which incident the plaintiff to this action says that she was forced off the road by negligent operation of an automobile on the part of the Defendant and plaintiff says that she was injured thereby.

2. Defendant was at the time of the incident complained of, Pastor of Northgate Presbyterian Church in Durham, North Carolina, and remained so employed until October 1977, when he became employed with Rhodes Furniture in Raleigh, to which employment he commuted daily. Defendant's wife is a teacher at Y.E. Smith School of Durham and has been so employed for the past six (6) years.

3. At the time of the accident referred to in plaintiff's Complaint and at all times since, the Defendant, Norris L. Fellows, has been a resident of Durham, North Carolina, having lived with his wife and three daughters at 803 Murray Avenue in the City of Durham from September 1968 until June 1978, at which time (June 1978) the Defendant and his wife and children moved to 506 Morreene Road, Durham, North Carolina.

4. That the house at 803 Murray Avenue, Durham, was owned by the Northgate Presbyterian Church and that when Defendant moved from that residence to 506 Morreene Road, Durham, in June 1978, he gave his address on Morreene Road to two (2) of his neighbors, to wit: Mr. J. Ben Barnes, 808 Murray Avenue, who lived directly across the street from Mr. Fellows and David G. Coffey of 812 Murray Avenue, who lived across the street and two houses down from Mr. Fellows. Defendant completed a change of address form with the Roxboro Road Post Office which was the post office nearest his home and mail addressed to Defendant at 803 Murray Avenue continued to be for-

warded to him at least through early April 1979. Defendant, when he moved from 803 Murray Avenue to 506 Morreene Road in Durham in June 1978, notified a number of firms and persons as to his new address including the local phone company, the local electric company the local newspaper, and various magazines.

5. The Defendant's name and number at 803 Murray were listed in all telephone books for Durham for the years 1968 through 1978. For some weeks after Defendant's move from 803 Murray to 506 Morreene Road, the Durham telephone company provided a service whereby if an old number was dialed, an operator would answer, ask the person dialing what number he dialed, and then give that person the new phone number.

6. The house at 803 Murray Avenue was owned by the Presbyterian Church and when vacated by the Defendant it was offered for sale by the Presbyterian Church. The selling agent was Jack Johnson of Johnson Realty and Auction Company of 707 North Carolina National Bank Building, Durham, North Carolina. Mr. Johnson's real estate sign showing his name, address and phone number appeared in the front yard at 803 Murray Avenue from the time Defendant moved out of the house in June 1978 until the house was sold in 1979.

7. Mr. Jack Johnson of Johnson Realty knew the Defendant personally and knew that he had moved to Morreene Road in Durham, North Carolina. Mr. Jack Johnson did not know Mr. Fellows' street number on Morreene Road. Morreene Road is several miles in length and contains a number of apartment developments. Mr. Jack Johnson was selling agent for Northgate Presbyterian Church. Upon moving from Murray Avenue to 506 Morreene Road in June 1978, the Defendant informed Northgate Presbyterian Church of his new address at 506 Morreene Road.

8. On October 5, 1978, plaintiff's attorney signed and filed a Complaint in the matter and Summons was issued to the Defendant at 803 Murray Avenue.

Emanuel v. Fellows

9. On October 5, 1978, the Summons was received by the Sheriff of Durham County. The Sheriff of Durham County made his return on October 4, *[sic]* 1978, indicating that the Defendant was not served for the following reason: "Subject has moved house is For Sale."

10. The Clerk of Superior Court did not send a copy of the Sheriff's Return of Service to plaintiff's attorney as the Clerk had suspended their service because the Clerk was moving from the old Courthouse to a new Courthouse.

11. Plaintiff's attorney checked the Court file in mid-November 1978, and discovered then that the Sheriff had been unable to serve Defendant.

12. That in mid-November 1978, plaintiff's attorney attempted to telephone the Defendant at the telephone number listed for him in the 1978 Durham Telephone Directory and was informed that the number was no longer in service. Plaintiff's attorney then dialed the directory assistance operator and was informed by the directory assistance operator that there was no other listing for the Defendant.

13. That thereafter no other summons was issued or an extension on the existing Summons issued until an Alias and Pluries Summons was issued on January 17, 1979. This Alias and Pluries Summons was not sent to a Sheriff for service.

14. Within a matter of days following the issuance of the Alias and Pluries Summons on January 17, 1979, plaintiff's attorney delivered to the Durham Morning Herald for publication, a Notice of Service of Process by Publication which Notice was published in said newspaper on January 23, January 30, and February 6, 1979.

15. That in late February 1979, the 1979 Durham Telephone Directory was published and delivered throughout Durham County and was then delivered to the office of plaintiff's attorney.

16. On March 2, 1979, an Assistant Clerk of Superior Court extended the time in which the Defendant could answer or otherwise plead up to and including the 5th day of April, 1979.

17. On March 8, 1979, an Assistant Clerk of Superior Court endorsed the reverse side of the October 5, 1978 Summons as follows: "Upon request of the attorney for the plaintiff, the time for serving this Summons is hereby extended the same number of days, from the date of this endorsement, as was originally allowed by law for service."

18. On April 5, 1979, the Court extended the time in which the Defendant could answer or otherwise plead up to and including the 25th day of April, 1979.

19. On April 25, 1979, Defendant filed Rule 12 motions to dismiss for lack of personal jurisdiction, insufficiency of process and insufficiency of service of process, which motion was supported by affidavit of Defendant, Norris L. Fellows. On the same date plaintiff's attorney delivered to the Sheriff of Durham County the Summons originally issued October 5, 1978, and endorsed on the reverse side thereof on March 8, 1979.

20. On May 2, 1979, the Sheriff of Durham County served the Summons originally issued October 5, 1978, and endorsed March 8, 1979, on the Defendant at 506 Morreene Road by leaving copies with Mrs. Norris L. Fellows, who was described by the Sheriff as being a person of suitable age and discretion who resided in the Defendant's dwelling house or usual place of abode.

21. On June 12, 1979, the Defendant renewed his earlier motions under Rule 12.

22. That plaintiff and her attorney have not attempted to mail a copy of Summons or Complaint to Defendant by any type of United States Mail.

Upon these findings of fact, the trial court concluded that the personal service by delivering copies of the 5 October 1978 summons to his wife on 2 May 1979 was ineffective to give the

court personal jurisdiction over the defendant. The trial court also concluded that defendant was properly served by publication pursuant to G.S. 1A-1, Rule 4(j)(9)c. Defendant appeals this determination of Jurisdiction over his person pursuant to G.S. 1-277(b).

*Randall, Yaeger, Woodson, Jervis and Stout, by John C. Randall, for plaintiff appellee.*

*Haywood, Denny and Miller, by John D. Haywood, for defendant appellant.*

VAUGHN, Judge.

Neither party questions the ruling of the trial court that personal service on defendant by delivering copies to his wife on 2 May 1979 was ineffective to obtain personal jurisdiction over defendant. The summons served on defendant on 2 May 1979 was issued on 5 October 1978 and, therefore, was not served within thirty days after it was issued and it had never been endorsed until 8 March 1979, more than ninety days after its original issuance. The alias and pluries summons issued 17 January 1979 was not served at this time. Both parties submit this personal service was ineffective under *Cole v. Cole,* 37 N.C. App. 737, 247 S.E. 2d 16 (1978).

The sole issue raised by this appeal is whether jurisdiction over the person of defendant was properly obtained through service by publication pursuant to G.S. 1A-1, Rule 4(j)(9)c. We hold there was proper service by publication on defendant and that, therefore, defendant's motion to dismiss for lack of personal jurisdiction, insufficiency of process and insufficiency of service of process pursuant to G.S. 1A-1, Rule 12(b)(2)(4)(5) was properly denied by the trial court.

Service of process by publication is in derogation of the common law and statutes authorizing it are strictly construed both as grants of authority and in determining whether service has been made in conformity with the statute. *Sink v. Easter,* 284 N.C. 555, 202 S.E. 2d 138, *rehearing den.,* 285 N.C. 597 (1974); *Thomas v. Thomas,* 43 N.C. App. 638, 260 S.E. 2d 163 (1979).

A party subject to service of process under this subsection (9) may be served by publication whenever the party's address, whereabouts, dwelling house or usual place of abode is unknown and cannot with due diligence be ascertained, or there has been a diligent but unsuccessful attempt to serve the party under either paragraph a or under paragraph b or under paragraphs a and b of this subsection (9) . . . .

. If the party's post-office address is known or can with reasonable diligence be ascertained, there shall be mailed to the party at or immediately prior to the first publication a copy of the notice of service of process by publication. The mailing may be omitted if the post-office address cannot be ascertained with reasonable diligence. Upon completion of such service there shall be filed with the court an affidavit showing the publication and mailing in accordance with the requirements of G.S. 1-75.10(2) and the circumstances warranting the use of service by publication . . . .

G.S. 1A-a, Rule 4(j)(9)c. Defendant contends that the entire publication procedure was improper because in the exercise of due diligence plaintiff could have discovered defendant's address, whereabouts, dwelling house or usual place of abode and could, therefore, have served him with process in a manner more likely to have given him actual notice than did the service by publication. The question is thus whether plaintiff exercised the due diligence required of the statute before service by publication is proper.

Plaintiff, in October 1978, attempted to have the sheriff serve defendant personally with process at 803 Murray Avenue, the address shown in the then current Durham telephone directory. Upon learning that the sheriff was unable to serve defendant personally, plaintiff's counsel placed a call to the number beside defendant's address in the then current Durham telephone directory. The number was revealed to be no longer in service. The directory assistance operator was called. The operator stated there was no other listing for defendant. Plaintiff's counsel, according to his affidavit, then contacted the insurance carrier for defendant which could furnish no

other address for defendant other than 803 Murray Avenue. Plaintiff then issued a new summons and commenced service by publication. Just prior to commencing service of process by publication, a copy of the new summons, complaint and notice of service by publication were mailed to defendant's insurance carrier. A telephone directory listing defendant's current address was not published until after service by publication had been completed. We hold these efforts by plaintiff constituted due diligence in attempting to ascertain defendant's address, whereabouts, dwelling place or usual place of abode.

Defendant points to several things he thinks should have been done if the standard of due diligence were to be met by plaintiff. Plaintiff did not, for example, interview or call defendant's old neighbors at 803 Murray Avenue, the realtor selling the 803 Murray Avenue residence or the deputy sheriff who attempted to serve process at this address. Plaintiff did not contact and check the records of any governmental agencies such as the post office, the Department of Transportation in Raleigh or the county register of deeds or clerk of court. Defendant contends he should have done all these things. Such investigation is commendable and should be encouraged. However, we do not wish to make a restrictive mandatory checklist for what constitutes due diligence for purposes of permitting Rule 4(j)(9)c publication. Rather, a case by case analysis is more appropriate. Under the facts and circumstances of this case, when plaintiff's counsel contacted directory assistance and defendant's insurer for his address to no avail, he acted with due diligence in attempting to determine defendant's address, whereabouts or usual place of abode.

Affirmed.

Judges PARKER and HEDRICK concur.