CALABRIA, Judge.
*478 Attorney Robert L. Scott ("defendant") appeals from an order granting partial summary judgment in favor of the North Carolina State Bar ("State Bar"), an order denying his motion for findings of fact, and an Order of Discipline issued by the Disciplinary Hearing Commission ("DHC") of the State Bar censuring him for his conduct. We affirm.
I. Background
Defendant graduated from Indiana University and was admitted to the Illinois bar in 1973. He practiced law in Illinois before being admitted to the North Carolina bar in 2005.
*479 In 2006, defendant was employed by the O'Brien Law Firm ("O'Brien" or "the Firm"), an interstate law firm that served as a real estate closing attorney for United States Department of Housing and Urban Development ("HUD") properties. Dennis O'Brien, the owner of the firm, is licensed to practice law in Ohio. Defendant was the Firm's North Carolina attorney, and his office was located in Greensboro, North Carolina. In September 2007, defendant signed an interstate law firm registration for the Firm as the managing attorney.
In 2008, Tammy McCrae-Coley ("McCrae-Coley") purchased a HUD property located at 728 Tucker Street in Burlington, North Carolina. The Firm represented both HUD and McCrae-Coley in the transaction. McCrae-Coley secured a loan from First Bank for the purchase of the property, which was secured by a deed of trust prepared by defendant. A HUD-1 settlement statement was prepared by O'Brien personnel, which showed that after the closing, McCrae-Coley's funds would be disbursed to pay $162.50 for the lender's title insurance and $404.45 for 2008 property taxes. The closing was held on 21 August 2008. Defendant did not attend the closing, but authorized a paralegal to conduct the closing and sign his name on the HUD-1 settlement statement.
In April 2009, First Bank notified McCrae-Coley that the title insurance company had not received payment for the lender's title insurance policy on the property. First Bank indicated that it had contacted O'Brien regarding the title insurance, but had been unable to get a response from the Firm. McCrae-Coley then repeatedly attempted to contact defendant's office, informing O'Brien that the title insurance company had not been paid and she "needed somebody to call [her] back to let [her] know what was going to happen." Despite assurances that her call would be returned with the pertinent information, McCrae-Coley's inquiries went unanswered until she had the opportunity to leave work and visit the Firm in person. By going to the Firm, the title insurance issue was resolved.
In December 2009, McCrae-Coley received a "Notice of Attachment and Garnishment" because the 2008 taxes on the property, plus the penalties, remained unpaid. McCrae-Coley paid a total of $641.05 for the outstanding taxes, then submitted copies of the tax bill and receipts to O'Brien for reimbursement. Since the Firm never reimbursed or contacted her, McCrae-Coley filed grievances with the State Bar against Dennis O'Brien and defendant. On 30 March 2010, approximately thirty days after the grievance *522 was filed and almost two years after the closing, the Firm issued a check to McCrae-Coley to reimburse her for the *480 delinquent taxes and penalties she had paid to stop the garnishment of her salary.
The State Bar filed a complaint against defendant on 16 January 2013, alleging that defendant had violated Rules 1.3, 1.15-2(m), 1.4(a), and 5.2(a) of the North Carolina Rules of Professional Conduct ("NCRPC"). Defendant filed an answer on 12 February 2013. Defendant also filed a motion for summary judgment on 13 August 2013 and a "Motion for Findings of Fact Pursuant to Rule 52 of the Rules of Civil Procedure" on 18 October 2013. On 28 October 2013, after a hearing, the DHC granted partial summary judgment in favor of defendant, concluding that he was entitled to judgment in his favor on the issue of whether he violated Rule 5.2(a). However, the DHC granted summary judgment in favor of the State Bar on the remaining alleged rule violations, and denied defendant's motion for findings of fact on the same date.
The DHC held another hearing in February 2014 to determine the only remaining issue regarding whether any discipline was appropriate. On 2 April 2014, the DHC entered an Order of Discipline, concluding that censure was the appropriate discipline for defendant's conduct. Defendant appeals.
As an initial matter, defendant's notice of appeal indicates that he is appealing from the order of summary judgment, the order denying his motion for findings of fact, an order denying his motion for reconsideration, and the Order of Discipline. However, defendant's brief does not present any arguments regarding the motion for reconsideration, and only presents arguments regarding the other orders. Therefore, defendant's appeal regarding the motion for reconsideration is deemed abandoned. See N.C.R.App. P. 28(b)(6) (2013) ( "Issues not presented in a party's brief, or in support of which no reason or argument is stated, will be taken as abandoned.").
II. Summary Judgment
Defendant argues that he should not be held accountable for the simple mistakes of staff that were controlled by the requirements of a federal contract. According to defendant, because of the Firm's "unique" nature as closing agent for HUD, federal regulations take precedence over the NCRPC. Specifically, defendant argues that to comport his conduct with the NCRPC would require "the abrogation of federal prerogatives or require the Defendant to quit his job." We disagree.
"Our standard of review of an appeal from summary judgment is de novo; such judgment is appropriate only when the record shows that *481 'there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.' " In re Will of Jones, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008) (citation omitted). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law[,]" and may be rendered against the moving party. N.C. Gen.Stat. § 1A-1, Rule 56(c) (2013). Additionally, Rule 52(a)(2) provides, in pertinent part, that "[f]indings of fact and conclusions of law are necessary on decisions of any motion or order ex mero motu only when requested by a party and as provided by Rule 41(b)." N.C. Gen.Stat. § 1A-1, Rule 52(a)(2).
In its summary judgment order, the DHC concluded that defendant violated the following NCRPC:
• by failing to timely obtain the title insurance policy for the lender and by failing to timely pay the property taxes following the McCrae-Coley closing, defendant did not act with reasonable diligence in violation of Rule 1.3;
• by failing to timely pay the title insurance premium from the funds received at closing, defendant failed to promptly disburse entrusted funds on McCrae-Coley's behalf in violation of Rule 1.15-2(m); and
• by failing to return McCrae-Coley's numerous telephone calls concerning the failure to pay the title insurance premium, defendant failed to promptly reply to *523 the reasonable requests for information by a client in violation of Rule 1.4(a).
Rule 1.3 of the NCRPC provides that "[a] lawyer shall act with reasonable diligence and promptness in representing a client." N.C. Rev. R. Prof. Conduct 1.3 (2013). Rule 1.15-2(m) states that an attorney "shall promptly pay or deliver to the client, or to third persons as directed by the client, any entrusted property belonging to the client and to which the client is currently entitled." N.C. Rev. R. Prof. Conduct 1.15-2(m) (2013). Rule 1.4(a) concerns an attorney's duty to keep a client informed, stating that an attorney "shall ... keep the client reasonably informed about the status of the matter" and "promptly comply with reasonable requests for information[.]" N.C. Rev. R. Prof. Conduct 1.4(a)(3), (4) (2013). Comment 4 to Rule 1.4 states that
*482 [w]hen a client makes a reasonable request for information ... paragraph (a)(4) requires prompt compliance with the request, or if a prompt response is not feasible, that the lawyer, or a member of the lawyer's staff, acknowledge receipt of the request and advise the client when a response may be expected.
N.C. Rev. R. Prof. Conduct 1.4, Cmt. 4.
Defendant relies on State v. Pledger, 257 N.C. 634, 127 S.E.2d 337 (1962), to support his contention that the DHC's order concluding that he violated the NCRPC involved administrative duties of office staff that are not controlled by an attorney, and none of their duties involve actions requiring legal judgment. In Pledger, the defendant worked for a company engaged in the sale and construction of shell homes. Id. at 636, 127 S.E.2d at 338. The defendant solicited sales and prepared deeds of trust at the time of sales. Id. The defendant was also responsible for the execution, acknowledgement, and recordation of the deeds of trust. Id. According to the State's evidence, the defendant, and the staff under his supervision, had prepared deeds of trust, and the defendant was not licensed to practice law in North Carolina. Id. at 637, 127 S.E.2d at 339. Since the defendant in Pledger was not licensed to practice law in North Carolina, he was charged with the unauthorized practice of law. Id. at 635, 127 S.E.2d at 338.
Although the instant case is not a criminal prosecution for the unauthorized practice of law, Pledger explains the intent of N.C. Gen.Stat. § 84-4 was not "to make unlawful all activities of lay persons which come within the general definition of practicing law ... its purpose is for the better security of the people against incompetency and dishonesty in an area of activity affecting general welfare." Id. at 637, 127 S.E.2d at 339 (citations omitted).
According to the State Bar, Pledger offers no solace to defendant. Pledger held that a non-attorney employee of a business could prepare legal documents for transactions in which the employer had a primary interest without violating the unauthorized practice of law statutes. Id. However, the State Bar is correct that Pledger did not apply this non-attorney exception to preparing legal documents for others. In the instant case, Pledger may have allowed non-attorney employees of HUD to prepare a deed on behalf of HUD, but Pledger did not apply to O'Brien, which HUD hired as its outside law firm.
Nevertheless, defendant contends that the State Bar failed to present any specific evidence that he personally violated the NCRPC. However, *483 the material facts of the matter are undisputed. Defendant, as the North Carolina attorney for the Firm representing McCrae-Coley at the closing, did not have sufficient supervisory authority over the non-attorney North Carolina employees to ensure that the work of the staff was compatible with defendant's obligations as a North Carolina attorney bound to abide by the NCRPC. Defendant is correct that non-attorneys can assist with real estate closings by performing title searches, preparing title policy applications, and paying taxes and title insurance premiums to the proper entities. However, a North Carolina closing attorney must make sure that the proper procedures are in place for non-attorneys to perform these functions diligently and promptly. When an attorney knows that these duties have not been performed diligently and promptly, the attorney is responsible for taking action to make sure that the non-attorneys *524 promptly reply to the client's requests for information.
In the instant case, the HUD-1 statement indicated that the title insurance premium and property taxes were to be paid from the funds disbursed at the closing. Since defendant's firm failed to promptly pay both the title insurance premium and the property taxes from McCrae-Coley's entrusted funds at the closing and failed to promptly reply to McCrae-Coley's inquiries about the title insurance in a timely manner, defendant is responsible. The evidence, including defendant's own testimony, proves that both Rule 1.3 and Rule 1.15-2(m) were violated by not promptly disbursing McCrae-Coley's entrusted funds to the proper entities for payments for the title insurance and the property taxes. In addition, defendant violated Rule 1.4(a) by failing to keep McCrae-Coley reasonably informed about the status of the matter or timely responding to her requests for information or reimbursement. Defendant appeared to contend at the summary judgment hearing that since McCrae-Coley did not specifically request to speak to him when she attempted to resolve the problems she encountered, the problems were created and exacerbated by his administrative staff. Defendant contends that the problems in the McCrae-Coley matter arose from the conduct of administrative staff, and therefore he did not personally violate the NCRPC. Defendant is mistaken. As the attorney responsible for McCrae-Coley's closing, he was primarily responsible for supervising the staff. Additionally, while defendant contends that the State Bar did not present evidence to refute his denial of a violation, the undisputed facts support summary judgment in favor of the State Bar.
Defendant also contends that the DHC erroneously denied his motion for findings of fact. However, "if findings of fact are necessary to resolve an issue, summary judgment is improper.... There is no *484 necessity for findings of fact where facts are not at issue, and summary judgment presupposes that there are no triable issues of material fact." Hodges v. Moore, 205 N.C.App. 722, 723, 697 S.E.2d 406, 407 (2010) (citations omitted). In Hodges, the trial court granted the defendant's motion for summary judgment and dismissed the plaintiff's action. Id. In the instant case, although defendant was denied summary judgment on several alleged rule violations, the DHC granted summary judgment in favor of the State Bar on those alleged rule violations. Therefore, the DHC determined that there were no material issues of fact, that the State Bar was entitled to judgment as a matter of law, and that defendant was not. Accordingly, no findings of fact were required. Although defendant contends Rule 56(a) of the North Carolina Rules of Civil Procedure requires that the DHC "state on the record the reasons for granting or denying the motion," there is no such provision in the North Carolina Rule. Instead, defendant appears to be referring to the Federal Rule 56(a). Additionally, defendant contends that the DHC "rush[ed] to judgment" and failed to consider his reply to the State Bar's response to his motion for summary judgment. However, his reply does not present any new facts that the DHC had not already heard in defendant's motion for summary judgment or at the hearing.
Finally, defendant contends that the DHC improperly shifted the burden of proof. Specifically, defendant contends that the questions posed to him by members of the panel show that the panel required him "to prove that the attorney client relations between [McCrae-Coley] and The O'Brien Law Firm were different than that envisioned by the Rules." Defendant is mistaken. The members of the panel asked defendant questions in order to clarify his explanation of why he believed the NCRPC did not apply to him in this situation.
In summary, defendant's arguments appear to obscure a relatively simple issue: that although First Bank provided the funds for McCrae-Coley's closing, and although McCrae-Coley understood that, upon completion of the closing, the funds would be disbursed to the title insurance company for the policy and to the county for the property taxes, her funds were not timely disbursed to the proper entities. In addition, defendant and his staff ignored her concerns when she contacted the Firm. As a member of the North Carolina Bar, defendant was obligated *525 to conform his conduct to the NCRPC. The State Bar presented sufficient evidence regarding the alleged violations, and the basic material facts of the matter were undisputed. Although defendant disputed whether the actions constituted violations of the NCRPC, as a matter of law the DHC properly granted summary judgment in favor of the State Bar on the alleged violations of Rules 1.3, 1.15-2(m), and 1.4(a). *485 III. Defendant's Discipline
Defendant also argues that the standard advanced by the State Bar is ambiguous, and that the NCRPC should not solely control this situation. We disagree.
Appeals from the DHC
are conducted under the 'whole record test,' which requires the reviewing court to determine if the DHC's findings of fact are supported by substantial evidence in view of the whole record, and whether such findings of fact support its conclusions of law[.] Such supporting evidence is substantial if a reasonable person might accept it as adequate backing for a conclusion. The whole-record test also mandates that the reviewing court must take into account any contradictory evidence or evidence from which conflicting inferences may be drawn.
N.C. State Bar v. Talford, 356 N.C. 626, 632, 576 S.E.2d 305, 309-310 (2003) (citations omitted). "[T]he statutory scheme set out in N.C.G.S. § 84-28 clearly evidences an intent to punish attorneys in an escalating fashion keyed to: (1) the harm or potential harm created by the attorney's misconduct, and (2) a demonstrable need to protect the public." Id. at 637-38, 576 S.E.2d at 313. The DHC shall issue "a censure in cases in which the respondent has violated one or more provisions of the Rules of Professional Conduct and the harm or potential harm caused by the respondent is significant and protection of the public requires more serious discipline." 27 N.C.A.C. 1B § . 0113(k)(1) (2013). The Rules of the North Carolina State Bar also set forth several specific factors for the DHC to consider in imposing discipline. See 27 N.C.A.C. 1B § .0114(w) (2013).
In the instant case, defendant approved his signature on the HUD-1 form, which indicated McCrae-Coley's entrusted funds collected for title insurance and property taxes would be disbursed. The record also indicates that defendant had previously accepted an admonition for a similar situation where funds were not timely disbursed to the proper entities in another transaction.
In the Order of Discipline, the DHC made findings that, inter alia, defendant identified himself as the Firm's North Carolina managing attorney on the Firm's interstate law firm registration statement, and that each attorney listed on the statement agreed to govern his personal and professional conduct with respect to legal matters arising in *486 North Carolina in accordance with the NCRPC. The DHC also found that the Firm was handling between 200-300 closings per month in North Carolina, and that defendant relied on non-attorney employees to perform title work, verify the taxes due, prepare the HUD-1 statements, secure and pay the title insurance, and perform post-closing reviews. Defendant did not exercise the proper supervisory authority sufficient to ensure that the work of the non-attorney employees was compatible with his professional obligations as the closing attorney.
The DHC then indicated that it had considered the factors enumerated in 27 N.C.A.C. 1B § .0114(w)(1) and (2), and that no factors were present to warrant defendant's disbarment or suspension. However, the DHC found that factors enumerated in 27 N.C.A.C. 1B § .0113(k) and 27 N.C.A.C. 1B § .0114(w)(3) applied to the instant case, including, inter alia, that defendant had prior discipline for similar conduct and refused to acknowledge the wrongful nature of his conduct; that defendant provided full and free disclosure to the panel and had a cooperative attitude toward the proceedings; and that defendant was experienced in the practice of law. The DHC then concluded that defendant's conduct violated one or more provisions of the NCRPC, that the harm or potential harm caused by defendant was significant, and that protection of the public required more than an admonition or reprimand. The DHC then censured defendant for his conduct in the McCrae-Coley matter.
Although defendant contends that the NCRPC should not solely control the instant *526 case, and that the State Bar failed to show that any violations of the NCRPC actually occurred, the evidence in the record contradicts his claims. The DHC heard all the evidence, including receiving defendant's deposition into evidence as well as hearing defendant's own testimony. The DHC also considered the factors prescribed by 27 N.C.A.C. § 1B in determining the type of discipline, if any, that was warranted by defendant's conduct. Therefore, the DHC properly considered the evidence that defendant had violated three provisions of the NCRPC, and properly found that censure was an appropriate discipline for defendant's conduct in the instant case.
IV. Conclusion
Although defendant contends that he was not subject to the NCRPC as an employee of the Firm serving as a real estate closing attorney for HUD, the facts of the instant case clearly indicate otherwise. Because there were no genuine issues of material fact in the instant case, the DHC properly granted partial summary judgment in favor of the State Bar. Additionally, the DHC properly considered all the evidence before *487 finding and concluding that censure was the appropriate discipline for defendant's conduct. We affirm the DHC's Order of Discipline.
AFFIRMED.
Chief Judge McGEE and Judge McCULLOUGH concur.